TRACY L. WILKISON
United States Attorney
JERRY C. YANG
Assistant United States Attorney
Chief, Riverside Branch Office
RYAN P. MANSELL (Cal. Bar No. 332477)
Assistant United States Attorney
Riverside Branch Office
    3403 10th Street, Suite 200
    Riverside, California 92501
    Telephone: (951) 368-1474
    Facsimile: (951) 276-6202
    E-mail:   Ryan.Mansell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>                 v.<br><br>CEASAR RICHARD DOMINGUEZ, JR.,<br><br>            Defendant. | ED CR No. 21-00097-JWH<br><br>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT CEASAR RICHARD DOMINGUEZ JR.; EXHIBIT 1<br><br>Sentencing Date: Jan. 24, 2022<br>Sentencing Time: 2:00 p.m.<br>Location:  Courtroom of the<br>           Hon. Mark C. Scarsi |

       Plaintiff United States of America, by and through its counsel
of record, the United States Attorney for the Central District of
California and Assistant United States Attorney Ryan P. Mansell,
hereby files its Sentencing Position for defendant Ceasar Richard
Dominguez Jr. ("defendant").

///

///

///

1    This Sentencing Position is based upon the attached Memorandum

2  of Points and Authorities, the files and records in this case, the

3  United States Probation Office's Presentence Investigation Report,

4  and such further evidence and argument as the Court may permit.

5   Dated: January 3, 2022          Respectfully submitted,

6                                    TRACY L. WILKISON
7                                    United States Attorney

8                                    JERRY C. YANG
9                                    Assistant United States Attorney
                                     Chief, Riverside Branch Office
10
                                     _____
11                                   RYAN P. MANSELL
12                                   Assistant United States Attorney

13                                   Attorneys for Plaintiff
14                                   UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                      2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On October 25, 2021, pursuant to a plea agreement, defendant Ceasar Richard Dominguez Jr. pleaded guilty to counts one and three of the first superseding indictment, which charges him with Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and Transporting Unlawfully Present Aliens for Private Financial Gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i).  (ECF No. 55, First Superseding Indictment.)  The government agrees with the Probation Officer's calculation that defendant's Guidelines range is 87 to 108 months of imprisonment, and respectfully requests that the Court sentence defendant to a low-end sentence of 87 months' imprisonment to be followed by a 4-year term of supervised release, a $200 special assessment, and a $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act.  The recommended sentence is warranted because defendant has a steady criminal history and engaged in reckless conduct during the commission of the instant offense.

### II.  STATEMENT OF FACTS

#### A.   AGREED UPON FACTS

At his change of plea hearing, consistent with the factual basis from his plea agreement, defendant admitted the following:

On April 15, 2021, in Riverside County, California, he drove a Saturn Vue SUV on Interstate 10.  The Saturn Vue bore license plates that belonged to a 2005 Jeep Liberty.  Defendant drove the vehicle within view of United States Border Patrol Agents, and he was carrying as passengers five aliens who were not lawfully in the United States, including J.B. (collectively, the "Smuggled Aliens").

The agents discovered the Smuggled Aliens in the vehicle's front passenger seat and backseat area.  When defendant was detained by the agents, the Smuggled Aliens were all citizens of Mexico and were not present in the United States lawfully.  Defendant knew that the Smuggled Aliens were not lawfully in the United States, yet defendant transported the Smuggled Aliens on Interstate 10 and elsewhere within Riverside County in order to help the Smuggled Aliens remain in the United States illegally and to receive a sum of money or property for defendant's own financial gain.  When defendant was detained by the agents, he was on his way to deliver the Smuggled Aliens and receive a sum of money or property in return.  (ECF No. 57, Plea Agreement ("Plea") ¶ 16.)

The agents also utilized a canine to conduct a drug sniff of defendant's vehicle.  After a positive hit, the agents searched defendant's vehicle.  On the driver-side floorboard, near the driver's seat and the center console, the agents discovered a plastic bag containing two bags of methamphetamine and one bag of light blue pills.  In total, the agents found 42 grams of methamphetamine and 32 pills containing fentanyl.  Defendant admitted that the methamphetamine found in the bag belonged to him, that he knew it was methamphetamine, and that he knew where it was located and had the power and intent to control it.  Defendant possessed the methamphetamine with the intent to distribute it. (*Id.*)

### B. ADDITIONAL FACTS REFLECTED IN PSR, REPORT, AND PLEA AGREEMENT

Defendant's offense conduct also included leading agents on a dangerous high-speed pursuit on highway and surface streets.  (ECF

2

No. 60, Presentence Report ("PSR") ¶ 17.)  Defendant admitted that he led agents on a twenty-minute pursuit after they attempted to stop him.  (Plea ¶ 16.)  In order to stop defendant, a supervisory border patrol agent attempted to disable defendant's vehicle by deploying a spike strip.  Defendant, who was just 50 yards away, drove towards the agent before swerving off the highway into the center median, passing behind the agent's parked patrol vehicle.  (PSR ¶ 17.) Dominguez accelerated to speeds exceeding 100 miles per hour, and he began swerving in and out of dense and merging traffic. Defendant's maneuvers between moving vehicles caused other drivers to slow down rapidly or swerve to avoid being struck by defendant's vehicle.  At one point, defendant narrowly avoided an 18-wheel truck in order to exit the highway, forcing one of the pursing agents to make a dangerous maneuver to maintain pursuit.  (*Id*.)  Even as the pursuit moved to surface streets, defendant maintained speeds over 70 miles per hour. Defendant drove his vehicle on the sidewalk to avoid being stopped, and the pursuit only ended when defendant's vehicle stopped due to a mechanical failure.  (*Id.* ¶ 18.)

Defendant admitted to the agents in a post-arrest *Mirandized* interview that he saw the emergency lights and fully marked border patrol vehicle, but decided not to stop his vehicle because he did not want to go to jail (*See* Exhibit 1, Report of Investigation ("ROI"), p. 8.)  Defendant also stated that he had used narcotics that morning at 6:00 a.m.  (*Id*. p. 9.)  One of defendant's passengers, J.B., indicated that defendant began to drive "erratically and dangerously" and that he and the other passengers "pleaded" with defendant to stop but that he refused.  (*Id*. p. 10.)

J.B. further stated that he was not wearing a seatbelt and feared for his life. (*Id*.)  Two of defendant's other passengers expressed similar concerns and fears. (*Id*. p. 12, 13.)

**III. SENTENCING GUIDELINES CALCULATIONS: 87-108 MONTHS' IMPRISONMENT**

The government agrees with the Probation Officer's calculations of a total offense level of 27 and a Criminal History Category of III.  (PSR ¶¶ 43 and 61.)  The government also agrees that the total offense level appropriately includes a two-level increase for reckless endangerment during flight, pursuant to U.S.S.G. § 3C1.2. (PSR ¶¶ 22, 37-40.)

**A.    Two-level Increase for Reckless Endangerment During Flight**

A two-level increase for reckless endangerment during flight is appropriate given defendant's conduct following the attempted stop by border patrol agents, as the Probation Officer found.  Under U.S.S.G. § 3C1.2, "if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels."  Under the guidelines, conduct is reckless "in a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such situation."  U.S.S.G. § 3C1.2 cmt. 2; U.S.S.G. § 2A1.4 cmt. 1.  "During flight" is broadly construed, and it includes conduct that occurs in the course of resisting arrest.  *See* U.S.S.G. § 3C1.2 cmt. 3.

Here, defendant admitted to the agents in his post-arrest interview that he was aware of the attempted stop and consciously

4

1   made the decision not to stop because he did not want to go to jail.

2   (ROI, p. 9.) Defendant's 100-mile-per-hour highway speeds and 70-

3   mile-per-hour surface speeds well exceeded any applicable speed

4   limits designed to insure safe operation of motor vehicles. Defendant

5   drove straight towards a border patrol agent at a high rate of speed,

6   and he caused other motorists and pursuing agents to swerve and

7   engage in maneuvers that deviated from the normal course of safe

8   driving and endangered their persons. The lengthy nature of the 20-

9   minute pursuit also increased the number of opportunities for a

10  serious accident to occur.

11      While defendant's driving was on its face unsafe and reckless,

12  defendant further stated to the agents that he had used narcotics

13  that morning—just one-and-a-half hours before the pursuit began.

14  (*Id.*, p. 9.)  Indeed, it is highly likely that defendant engaged in

15  these dangerous high-speed maneuvers while impaired and under the

16  influence of narcotics.  Finally, defendant had five passengers in

17  the vehicle during the pursuit, and he admitted that the passengers

18  were trying to speak to him during the pursuit.  One of the

19  occupants, J.B., indicated that defendant began to drive "erratically

20  and dangerously" and that he and the other passengers "pleaded" with

21  defendant to stop but that he refused.  J.B. further stated that he

22  was not wearing a seatbelt and feared for his life.  Defendant's

23  other passengers expressed similar fears.

24      Defendant's behavior and conduct created a high risk of serious

25  bodily injury.  Indeed, one of the pursuing agents, an unsuspecting

26  member of the public (whether a pedestrian or motorist), or one of

27  defendant's passengers could have been involved in a serious traffic

28

5

collision caused by defendant's conduct.  Defendant's behavior created a high risk that, for example, he would cause (1) a serious high-speed traffic collision on the freeway, (2) a serious traffic collision with comparatively low-speed surface street traffic, (3) a collision with the supervisory agent as defendant attempted to swerve and avoid the spike strip and pursuing agents, or (4) a collision with an object causing one of his unrestrained passengers to be ejected from the vehicle.  At speeds of over 100 miles per hour on the highway, and over 70 miles per hour on the surface streets, a traffic collision could have caused serious bodily injury or death to any persons involved.  For these reasons, the enhancement should apply.

**B.    Defendant has not yet met the Criteria of U.S.S.G § 5C1.2(a)(5); not Eligible for Safety Valve**

In order to qualify for safety valve relief, a defendant must satisfy all the criteria in 18 U.S.C. §§ 3553(f)(1)-(5) and U.S.S.G §§ 5C1.2(a)(1)-(5). The defendant bears the burden of proving, by a preponderance of the evidence, that he qualifies for the safety valve provision. *See United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir. 1996).  While defendant likely meets the requirements of U.S.S.G § 5C1.2(a)(1)-(4) and 18 U.S.C. §§ 3553(f)(1)-(4), defendant must also satisfy U.S.S.G § 5C1.2(a)(5) and 18 U.S.C. § 3553(f)(5) by "truthfully provid[ing] the government with all the information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *See United States v. Thompson*, 81 F.3d 877, 880 (9th Cir. 1996) (strictly construing "all" and finding that defendant did not

6

qualify where he did not reveal the source of the drugs).  Defendant must make this proffer by the time of the sentencing hearing; if the defendant has no relevant or useful other information to provide, or the government is already aware of the information, the Court is not precluded from finding that defendant has complied with this criterion; in other words, "a defendant can qualify for relief under § 5C1.2 even if he does not substantially assist the Government." *Thompson*, 81 F.3d at 880.

In the context of U.S.S.G § 5C1.2(a)(5), if defendant proves by a preponderance of the evidence that he has satisfied this criterion, "the burden shifts to the government to show that the information the defendant supplied was untrue or incomplete."  *United States v. Tafolla-Gonzalez*, 393 F. App'x 502, 505 (9th Cir. 2010) (citing *United States v. Diaz-Cardenas*, 351 F.3d 404, 409 (9th Cir.2003)). Statements made by defendant during an arrest or post-arrest interview, if not forthright, do not satisfy the requirement of U.S.S.G § 5C1.2(a)(5). *United States v. Zamora*, 143 F. App'x 63, 64 (9th Cir. 2005).  Likewise, defendant's open-court statements do not necessarily satisfy U.S.S.G § 5C1.2(a)(2) where the defendant has not met, or refused to meet, separately with prosecutors. *United States v. Naranjo*, 231 F. App'x 680, 682 (9th Cir. 2007).

Here, defendant has not met with the government to engage in what is often referred to as a "safety valve" proffer.  Assuming defendant will aver that he has been truthful and complete in his post-arrest *Mirandized* statement, the government would rebut defendant's claim.  In defendant's post-arrest, *Mirandized* interview, defendant was not forthcoming regarding the full nature of his

7

conduct and reasons for possessing a large quantity of pure methamphetamine and fentanyl pills.  (ROI, p. 9 (defendant only discussed his own use).)  Moreover, neither in that interview, or since then, has defendant has provided the government with *all* information or evidence concerning his offenses or complied in any other way with U.S.S.G § 5C1.2(a)(5).  For example, the government is not aware of "all" the information and evidence regarding defendant's drug offense or his course of conduct in obtaining and planning to distribute the drugs.  For these reasons, defendant has not yet met the requirements of U.S.S.G § 5C1.2(a)(5) and he does not qualify for safety valve relief.

**IV.  GOVERNMENT'S RECOMMENDED SENTENCE: 87 MONTHS' IMPRISONMENT AND 4 YEARS' SUPERVISED RELEASE.**

The Sentencing Guidelines are the "starting point and the initial benchmark" for sentencing. *United States v. Carty*, 520 F.3d 984, 996 (9th Cir. 2008).  After calculating the Guidelines range, the Court must consider the factors outlined in 18 U.S.C. § 3553(a).

**A.   87 Months' Sentence Appropriate Based on Nature of the Offense and Defendant's History**

Upon consideration of the nature and circumstances of the offense and the history and characteristics of defendant, 18 U.S.C. § 3553(a)(1), a sentence of 87 months is appropriate.  Defendant has remained undeterred from engaging in criminal offenses despite repeated convictions.  Indeed, defendant has thirteen prior convictions (PSR ¶¶ 47-59.)  Defendant proceeded in this case to possess with intent to distribute 42 grams of methamphetamine as well as fentanyl pills, while simultaneously transporting unlawfully present aliens for financial gain.  (Id. ¶ 10.)

8

1
2

   **B.    87 Months' Sentence Appropriate Based on the Substantial and Detrimental Effect of Drug Offenses**

3    A Defendant's possession of controlled substances for
4 distribution warrants the government's requested sentence.  The
5 "distribution, and possession and improper use of controlled
6 substances have had a substantial and detrimental effect on the
7 health and general welfare of the American people."  21 U.S.C.
8 § 801(2).  Drug trafficking has had a particularly devastating impact
9 in the Central District of California.  Indeed, in 1990, the White
10 House designated the Los Angeles area (including Riverside and San
11 Bernardino Counties) as a High Intensity Drug Trafficking area.  As
12 for methamphetamine, the increased use of the drug has led to
13 devastating effects on individuals and the communities in this
14 District.  The increase in methamphetamine use has led to a
15 corresponding increase in the number of violent crimes and a dramatic
16 increase in deaths.

17   **C.    Defendant's Mitigating Factors Warrant a Low-end Sentence**

18    At a very young age, defendant was exposed to drugs and gang
19 activity through his father.  (PSR ¶ 79.)  Defendant began using
20 methamphetamine as a young teenager, and, rather than correct the
21 behavior, defendant's own father began using with defendant.  (*Id.* ¶
22 87.)  Indeed, it appears that defendant's father was a source of
23 methamphetamine for defendant and his friends.  (*Id.*)  Defendant
24 suffered from the current global pandemic when he contracted COVID-19
25 and was let go from his employment at a hardware store.  (*Id.* ¶ 91.)
26 These circumstances justify a sentence at the low-end of the

27
28

9

1   Guidelines range, not a departure from, or variance below the

2   Guidelines.

3       **D.   Unwarranted Disparities Can Be Avoided by Imposing a**
         **Sentence Within the Guideline Range**

4

5       The Court should minimize sentencing disparities among similarly

6   situated defendants.  18 U.S.C. § 3553(a)(6).  One way courts ensure

7   consistent sentences for similarly situated defendants across the

8   country is by applying the Guidelines uniformly.  *See United States*

9   *v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the

10  Guidelines range was correctly calculated, the district court was

11  entitled to rely on the Guidelines range in determining that there

12  was no 'unwarranted disparity' . . . ."); *see also Gall v. United*

13  *States*, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted

14  disparities was clearly considered by the Sentencing Commission when

15  setting the Sentencing Guidelines ranges.").  A Guidelines-range

16  sentence, especially a low-end one, is reasonable even where a

17  defendant has endured challenges in life or has struggled with

18  substance abuse.  *United States v. Carter*, 560 F.3d 1107, 1022-23

19  (9th Cir. 2009) (finding the imposition of a within-Guidelines

20  sentence reasonable despite defendant's youth, prior non-violent

21  criminal history, and difficult childhood because nothing about those

22  circumstances placed the defendant outside the heartland of similar

23  characteristics and circumstances contemplated by the Guidelines);

24  *United States v. Stoterau*, 524 F.3d 988, 1001-02 (9th Cir. 2008)

25  (finding the imposition of within-Guidelines sentence reasonable

26  because abuse defendant "suffered as a child, his mental health

27  issues, and his life-long struggle with methamphetamine addiction"

28

                                    10

did not constitute special circumstances compelling a downward variance).  Thus, a low-end sentence of 87 months' imprisonment is appropriate here where defendant does not fall outside the "'minerun of roughly similar cases' considered by the Sentencing Commission in formulating the Guidelines." *Carter*, 560 F.3d at 1122-23.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court sentence defendant to 87 months' imprisonment followed by a 4-year term of supervised release, a $200 special assessment, and a $5,000 special assessment pursuant to the Justice for Victims of Trafficking Act